FILED

MAR 20 2014

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**DONALD BENNETT,**

      **Plaintiff,**

v.

                                                   **Case No. 2:13cv189**

**CAROLYN W. COLVIN,**
**Acting Commissioner,**
**Social Security Administration,**

      **Defendant.**

### REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 1383(c)(3), Plaintiff Donald Bennett ("Mr. Bennett") seeks judicial review of the final decision of the Defendant, the Acting Commissioner of the Social Security Administration ("Acting Commissioner"), which denied Mr. Bennett's claim for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-434 ("the Act"). Mr. Bennett filed a Motion for Summary Judgment, ECF No. 9, with a brief in support, ECF No. 10. In response, the Defendant filed her own Motion for Summary Judgment, ECF No. 11, with a memorandum in support, ECF No. 12. Mr. Bennett filed a reply brief to the Defendant's Motion for Summary Judgment. ECF No. 13.

This action was referred to the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. For the following reasons, the undersigned **RECOMMENDS** that Mr. Bennett's Motion for Summary Judgment, ECF No. 9, be **DENIED**; the Defendant's Motion for Summary

Judgment, ECF No. 11, be **GRANTED**; and the final decision of the Acting Commissioner be **AFFIRMED** and that this case be **DISMISSED WITH PREJUDICE.**

## I. PROCEDURAL BACKGROUND

Mr. Bennett filed his application for DIB on February 22, 2010, originally alleging a disability onset date of December 3, 2009.[1] R. 63.[2] Mr. Bennett's date last insured ("DLI") was December 31, 2013. Therefore, he was required to establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. *See* R. 17. His application was initially denied on September 19, 2010, R. 54-63, and denied again on reconsideration on April 21, 2010. R. 64-75.[3] On May 17, 2010, Mr. Bennett requested a hearing in front of an administrative law judge ("ALJ"), R. 88-89, which was held on February 1, 2012. R. 30-53. Mr. Bennett appeared with counsel, and the ALJ also took testimony from an impartial vocational expert ("VE"). *Id.* The ALJ issued his decision on March 1, 2012 denying Mr. Bennett's DIB claim. R. 14-29. The Appeals Council for the Office of Disability and Adjudication ("Appeals Council") denied Mr. Bennett's request for review of the ALJ's decision on February 14, 2013. R. 1-4. After exhausting his administrative remedies, Mr. Bennett filed his Complaint for judicial review of the Acting Commissioner's final decision on April 11, 2013. ECF No. 1. The Acting Commissioner filed an Answer and the Administrative Record on June

---

[1] In his initial application, Mr. Bennett alleged a disability onset date of December 3, 2009, but that date was subsequently amended to December 3, 2008, as used by the ALJ and as documented in his subsequent administrative papers. R. 116-17.

[2] "R." refers to the certified administrative record that was filed under seal on June 21, 2013, pursuant to Local Civil Rules 5(B) and 7(C)(1).

[3] Both Dr. Longa, the medical consultant used for the Initial Disability Determination, and Dr. Castle, the medical consultant used for the Disability Determination on Reconsideration, found that Mr. Bennett was capable of performing light work. R. 60, 73.

20, 2013. ECF No. 5. Because both parties have filed motions for summary judgment, the matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Acting Commissioner's final decision is limited to determining whether the Acting Commissioner's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *see also Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))); *see also Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (holding that substantial evidence is more than a scintilla but less than a preponderance).

In determining whether the Acting Commissioner's decision is supported by substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citing *Craig v. Chater*, 76 F.3d at 589 (4th Cir. 1996)). The Acting Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays*, 907 F.2d at 1456-57. Overall, if the Acting Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the Court is to affirm the Acting Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th

3

Cir. 1966); *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996) (granting the Commissioner latitude in resolving inconsistencies in the evidence, which the Court reviews for clear error or lack of substantial evidence).

### III. ALJ's FINDINGS OF FACT AND CONCLUSIONS OF LAW

In accordance with the five-step sequential analysis to determine Mr. Bennett's eligibility for benefits, the ALJ made the following findings of fact and conclusions of law. The Court reviews the record and examines the five-step analysis to determine whether the correct legal standards were applied and whether the resulting decision of the Acting Commissioner is supported by substantial evidence. 20 C.F.R. § 404.1520.

First, Mr. Bennett had not engaged in substantial gainful activity since December 3, 2008, the alleged onset date. R. 17. Second, Mr. Bennett had the following severe impairments: lumbosacral degenerative disc disease, status post cervical fusion of the C6-7 vertebrae, and single vessel coronary artery disease. R. 19. The ALJ found that Mr. Bennett's other cited impairments—specifically, headaches and diabetes mellitus (diabetes)—were non-severe because they did not exist continually for a period of at least 12 months, were responsive to medication, did not require any significant medical treatment, or did not result in any continuous exertional or nonexertional functional limitations. R. 19. Specifically, the diabetes was noted to be controlled on August 08, 2011. R. 20. In addition, Mr. Bennett did not allege any limitations related to his headaches or diabetes. R. 20. Due to this lack of evidence, the ALJ found these impairments to be non-severe. R. 19-20. Third, Mr. Bennett does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. *Id.* (citing 20 C.F.R. §§ 416.920(d),

416.925, 416.926). Fourth, Mr. Bennett had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) that requires only occasional bending, stooping, and squatting, and no reaching overhead. R. 23. Fourth, the ALJ determined that Mr. Bennett is unable to perform any past relevant work. R. 23. The Vocational Expert ("VE") testified that the claimant's past relevant work as a delivery driver and warehouse worker was classified as heavy, semi-skilled work, and because Mr. Bennett was limited to less than a full range of light work, the ALJ concluded that Mr. Bennett was unable to perform his past relevant work. R. 23. Lastly, after considering Mr. Bennett's age, education, work experience, RFC, and the testimony of the VE at the hearing, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Mr. Bennett could perform, and as such, he is not disabled. R. 24-25.

## IV. RELEVANT FACTUAL BACKGROUND

In his initial DIB application, Mr. Bennett alleged a disability onset date of December 3, 2009. R. 109-15. On July 13, 2010, Mr. Bennett filed an amendment to his initial application seeking to change the onset date to December 3, 2008. R. 116-17. As of the amendment date, Mr. Bennett was a forty-nine year-old male who had attended school through the ninth grade. R. 34. Mr. Bennett last worked in 2009 when he was terminated from his job as a delivery driver and warehouse worker due to too many injuries. R. 36, 192. This previous employment extended over a nearly thirteen-year period from 1996-2009. R. 192.[4] Prior to that, Mr. Bennett worked as a delivery driver for an office supply company from 1992-1996. R. 192. At the ALJ Hearing held on February 1, 2012, Mr. Bennett was represented by counsel, and the ALJ took testimony from

---

[4] The company at which Mr. Bennett was employed, Tidewater Fleet, changed its name twice during his tenure. It was formerly known as Tidewater Battery, and before that, Darwin Properties. R. 36.

5

Mr. Bennett and an independent Vocational Expert ("VE"). Mr. Bennett provided the following testimony upon examination by the ALJ and his own attorney:

Mr. Bennett last worked in 2009 as a delivery driver and warehouse worker for Tidewater Fleet. R. 35. Although he has never obtained a GED, Mr. Bennett is capable of reading, writing and performing basic math functions like adding, subtracting, multiplying, and dividing. R. 34. Mr. Bennett lives with his wife, two daughters, and four grandchildren. R. 34, 37. His wife's part-time job provides him with his only current source of income. R. 35. However, Mr. Bennett did receive a workman's compensation settlement nearly one year prior to this proceeding. R. 35.

On a typical day, Mr. Bennett gets up around 7:30, takes his insulin, then goes back to his room and lies down. R. 37. His activities during the day consist of playing PlayStation games intermittently, riding his motorcycle, picking up his grandchildren from the bus, watching television, cooking and doing laundry on occasion, and sometimes going window shopping. R. 37-39, 171. He goes to bed at approximately midnight, although he mentions having trouble sleeping because of the many thoughts going through his head. R. 39.

Mr. Bennett testified that his back pain was the primary ailment preventing him from returning to work. R. 40. As a result of a pinched nerve in his back, Mr. Bennett experiences severe pain going down his left leg and into his hip. R. 40. He stated that his attempts to ease this pain through rehabilitation treatment were unsuccessful. R. 40-41. In addition, he claimed that injections into his back for the pain provided no relief. R. 48. Mr. Bennett stated that standing and bending over exacerbates this pain, and claimed that he is only able to stand for "10 minutes tops" before he is forced to sit down due to the pain. R. 41. Mr. Bennett asserted that this pain, among other ailments, rendered him unable to work in November of 2009. R. 40.

6

In addition to the back pain, Mr. Bennett reported having problems with his shoulder, neck, knee, and fingers. R. 41, 43. An MRI of Mr. Bennett's left shoulder revealed the source of this pain to be a result of multiple factors.[5] R. 42. He claims that the pain in his shoulder makes it difficult for him to reach and lift overhead. R. 42. Mr. Bennett also underwent neck surgery in which two cadaver discs were put in the C6 and 7 positions, along with a titanium plate and screws. He still experiences pain in his neck when turning, looking up, or looking down. R. 42. This pain radiates into his left shoulder and down his arm. R. 42. Mr. Bennett also had left knee surgery in 2001 to repair a torn meniscus. Despite the surgery, Mr. Bennett is still unable to run. R. 43. Mr. Bennett also reported having arthritis in his fingers which "hurts [him] a lot sometimes." R. 43. Mr. Bennett takes Vicodin on occasion to help with the pain resulting from his multiple ailments, however, he claims that the medication does little to ease the pain. R. 43.

On direct examination by Mr. Bennett's attorney, it was revealed that Mr. Bennett also has a history of heart trouble. R. 44. One day back in November of 2011, he began experiencing severe chest pain "all of a sudden." R. 44. Mr. Bennett was hospitalized for three days as a result of this incident. R. 44. Approximately once a week he still experiences chest pain that radiates into his arm. R. 44. To alleviate this pain Mr. Bennett takes nitroglycerin, but often has to take up to as many as three doses before the pain subsides. R. 44-45.

As a result of Mr. Bennett's ailments, he has been forced to give up many of the previous social activities he once enjoyed. R. 47. He no longer is able to play the drums, an activity he engaged in for nearly thirty years, and he was forced to quit the bowling league he belonged to for many years. R. 46-47. He is also unable to perform many basic household chores such as taking out the trash, doing yard work, or doing the dishes. R. 47-48. Mr. Bennett stated that he is

---

[5] The MRI indicated that Mr. Bennett had tendonitis, bursitis, and a bone spur in his left shoulder. R. 42.

unable to pick up his grandkids and hold them. R. 47.

Mr. Bennett is also a diabetic. R. 57. Although there was no discussion of any specific limitations related to his diabetes during the ALJ Hearing, both Dr. Longa and Dr. Castle, DDS' medical consultants, characterized Mr. Bennett's diabetes as "severe" in their medical reports. R. 57,69.

In step two of his analysis, the ALJ found that Mr. Bennett had three severe impairments: lumbosacral degenerative disc disease, status post cervical fusion of the C6-7 vertebrae, and single vessel coronary artery disease. R. 19. All other alleged limitations were determined to be non-severe. R. 19. Specifically, the ALJ held that there was no objective evidence of any significant functional limitations related to Mr. Bennett's diabetes because his diabetes was noted to be controlled on August 08, 2011. R. 19-20, 712. In addition, the ALJ noted the lack of any assertion by Mr. Bennett of specific limitations relating to his diabetes. R. 20. The ALJ similarly found Mr. Bennett's headaches to be non-severe because there was no objective evidence of any significant functional limitations related to this particular ailment. R. 19-20.

Subsequently, the ALJ found that Mr. Bennett's medically determinable impairments (lumbosacral degenerative disc disease, status post cervical fusion of the C6-7 vertebrae, and single vessel coronary artery disease) could reasonably be expected to cause the alleged symptoms, but that statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with his RFC assessment. R. 21.

With regard to the neck and back pain, the ALJ relied on, and summarized, medical reports from treating physicians at Atlantic Orthopaedic Specialists and MES Solutions between December 2008 and March 2009. R. 21 (citing R. 248-58, 460-68). On December 29, 2008, Mr.

Bennett reported that Prednisone provided ninety-five percent pain relief until the medication stopped, and it was noted that his motors and sensation were intact. R. 256. On February 02, 2009, Mr. Bennett indicated that he was one-hundred percent improved following an epidural steroid injection. R. 252. He had no pain at this time and his motor strength and sensation were still intact. R. 252. He was released to return to work with twenty-five pound lifting and limited bending restrictions. R. 252. Treatment notes from February 25, 2009 indicated that Mr. Bennett stated that he was feeling well. R. 251. Treatment notes from March 30, 2009 revealed that Mr. Bennett reported some mechanical neck pain and tenderness in the neck. R. 250. However, motor and sensory examination were normal in the upper and lower extremities at this time, and the treating physician concluded that Mr. Bennett had reached maximum medical improvement. R. 250. An independent medical examination, conducted on June 22, 2009, indicated that Mr. Bennett was able to sit comfortably, and had normal dexterity. R. 461. Examination of the lumbar spine showed discomfort and tenderness to palpitation in the lumbosacral area and the left iliac crest. R. 461. Sensation in his lower extremities was normal, and no atrophy was appreciated. R. 461.

The ALJ then examined Mr. Bennett's history of heart disease. R. 22. Mr. Bennett was admitted to Sentara Leigh Hospital from November 4, 2011 until November 7, 2011 with unstable angina. R. 614. He reported a sudden onset of chest pain with radiation to his arm. R. 614. Chest x-rays taken at the hospital were negative. R. 614. Mr. Bennett was again admitted to the hospital on November 28, 2011 for chest pain. R. 647. A cardiac catheterization revealed that Mr. Bennett had single vessel coronary heart disease involving a small to medium size vessel and no significant stenosis and normal left ventricular systolic function with an ejection fraction of

9

approximately sixty percent.[6] R. 663. He was discharged in stable condition that same day R. 649.

The ALJ also examined Mr. Bennett's history of shoulder pain. R. 22. He noted that X-rays of Mr. Bennett's shoulder taken in June of 2011 were negative for any abnormalities. R. 686.

In light of all the medical evidence available, the ALJ concluded that while Mr. Bennett's severe impairments could reasonably be expected to cause the alleged symptoms, his allegations regarding the intensity, persistence, and limiting effects of his symptoms were not supported by the objective clinical findings, the conservative course of treatment, or his activities of daily living. R. 22. His medical imaging results were consistently mild, R. 256, 679, and Mr. Bennett consistently exhibited normal reflexes, motor strength, and sensation when examined. R. 248-58. In addition, Mr. Bennett's single vessel coronary heart disease is treatable, R. 649, and his other impairments have been managed with conservative treatment. R. 248-58, 690-730. The ALJ also concluded that Mr. Bennett's daily living activities were inconsistent with a finding of disability. R. 23.

In addition, the ALJ weighed the opinions of three medical professionals, Dr. Abbott Byrd, Dr. Cynthia Romero, and Dr. Edward Gold, to facilitate his RFC determination. R. 23. Dr. Byrd is an orthopedic specialist who examined Mr. Bennett post neck surgery. R. 248-58. Dr. Romero is a family practitioner and was one of Mr. Bennett's treating physicians. R. 306-68, 565-66. Dr. Gold was a consulting physician who conducted an independent medical examination of Mr. Bennett. R. 460-64. The ALJ assigned significant weight to the opinion

---

[6] An ejection fraction measurement between 55% and 70% is normal.

evidence offered by Dr. Byrd on March 30, 2009.[7] R. 23. In his medical report, Dr. Byrd stated that Mr. Bennett had permanent twenty-five pound lifting and limited bending restrictions, an assessment consistent with the mild findings on medical imaging and clinical examinations. R. 250. Dr. Gold agreed with these restrictions, however, he additionally noted that Mr. Bennett could sit for eight hours in an eight-hour workday, and stand or walk five hours. R. 463. The ALJ found Dr. Gold's opinion, that Mr. Bennett should be limited to less than six hours of standing and walking in an eight-hour workday, to be contrary to objective findings which showed that Mr. Bennett had normal motor strength and sensation in his lower extremities. R. 23. Dr. Gold's opinion was, therefore, assigned only moderate weight. R. 23.

Dr. Romero submitted a medical source statement on October 11, 2010, asserting that Mr. Bennett could lift and carry no more than ten pounds occasionally; sit, stand, or walk less than two hours in an eight-hour day; needed unscheduled work breaks more than four times a day; and would be absent from work more than four times a month. R. 565-66. The ALJ found this assessment contradictory to Dr. Romero's own treatment notes, the mild objective findings, and the conservative course of treatment. R. 23. Therefore, this assessment was given little weight. R. 23. In addition, the fact that Mr. Bennett was granted a workman's compensation settlement was given little weight because it was based on a different standard than that applied by the Social Security Administration. R. 23.

Ultimately, the ALJ concluded that, in light of the objective clinical findings, the conservative course of treatment, and Mr. Bennett's activities of daily living, Mr. Bennett had the RFC to perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b)

---

[7] In the ALJ's decision, he cites this medical record and attributes it to Dr. Cynthia Romero. However, it appears the treating physician who actually created the record was Dr. Byrd, who just cc'd Dr. Romero on the medical report. R. 250.

that requires only occasional bending, stooping or squatting, and no reaching or lifting overhead. R. 23.

Mr. Bennett now raises two issues on review: (1) whether the ALJ's failure to address the medical opinions of the DDS medical consultants, Dr. Longa and Dr. Castle, amounts to reversible error; and (2) whether the ALJ's finding that Mr. Bennett's diabetes is not a severe medical impairment, a finding in contradiction with the DDS medical consultants, amounts to reversible error. ECF No. 10 at 1. For the reasons discussed below, the Court finds that no reversible error occurred, and that the ALJ's opinion is supported by substantial evidence in the record.

## V. ANALYSIS

### A. The ALJ's failure to consider or weigh the opinions of DDS medical consultants, Dr. Longa and Dr. Castle, was harmless error.

Mr. Bennett's first argument on appeal is that the ALJ's failure to assess the medical opinions of the DDS medical consultants, Dr. Longa and Dr. Castle, amounts to reversible error. ECF No. 10. In contrast, the Acting Commissioner argues that that the ALJ's lack of assessment is harmless error. ECF No. 12. As a threshold matter, this Court must decide whether the ALJ made an error of law before determining whether any such error prejudiced the claimant. *Cf. Coffman v. Bowan*, 829 F.2d 514, 517 (4th Cir. 1987) (holding that when the ALJ made an error of law, the court must reverse the final decision).

Generally, "administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for ultimate determination about whether you are disabled." 20 C.F.R. § 404.1527. "The Social Security Administration recognizes DDS

consultants as highly qualified physicians who are experts in the evaluation of disability claims under the Social Security Act." *See* 20 C.F.R. § 404.1527(f)(2)(i); *Bracey v. Astrue*, 5:07-CV-265-FL, 2009 WL 86572 (E.D.N.C. Jan. 6, 2009). "The DDS Medical Consultants constitute non-examining sources, and their opinion evidence is to be assessed under § 404.1527(e)." *Ambrose v. Astrue*, 2:11CV683, 2013 WL 1308981 (E.D. Va. Mar. 28, 2013). The ALJ "must also discuss the weight he assigns to such opinions, including the opinions of state medical consultants." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014). Examples of factors that the ALJ should consider when evaluating the opinion of a DDS consultant are: "the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of opinions." 20 C.F.R. § 404.1527.

The ALJ in the present case offered no assessment of the medical opinions rendered by the DDS medical consultants, Dr. Longa and Dr. Castle. The only medical source statement opinions to which he did assign weight were those given by Dr. Romero, one of the claimant's treating physicians, and Dr. Gold, a physician who examined Mr. Bennett in connection with the claimant's prior Worker's Compensation claim. R. 23.

The first of the DDS medical consultants, Dr. Longa, relied on many sources of medical evidence when making her initial disability determination, including the medical opinion of Dr. Romero. R. 55-56. As stated earlier, the ALJ gave little weight to the medical source statement issued by Dr. Romero on October 11, 2010, concluding that this assessment was inconsistent with Dr. Romero's own treatment notes, the mild objective findings, and the conservative course of treatment. R. 23. After considering Dr. Romero's report along with other medical evidence,

13

Dr. Longa came to the conclusion that the claimant was capable of performing light work, and was not disabled. R. 60, 61. Following this determination, Mr. Bennett sought to have Dr. Longa's assessment reconsidered. R. 64-75. On reconsideration, the second DDS medical consultant, Dr. Castle, also relied on many sources of medical evidence, including the medical opinion of Dr. Romero. R. 65-68. He, too, came to the conclusion that Mr. Bennett was capable of performing light work, and was not disabled. R. 73.

The ALJ did not address either of the DDS medical consultants' opinions in his decision. This omission was in violation of his duty to consider the findings and other opinions of State agency medical and psychological consultants and to weigh the opinions of these medical consultants. *See* 20 C.F.R. § 404.1527(f)(2)(i); *Bracey v. Astrue*, 5:07-CV-265-FL, 2009 WL 86572 (E.D.N.C. Jan. 6, 2009). The breach of this duty constitutes error. *Id.* What must next be determined is whether this error was harmless or prejudicial.

The harmless error doctrine states that, "on the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C.A. § 2111 (West). Unless the claimant seeking reversal of an adverse decision can prove that an error materially affected the outcome of the case, the prior decision should be affirmed. *See Alexander v. Astrue*, 5:09-CV-432-FL, 2010 WL 4668312 (E.D.N.C. Nov. 5, 2010) (noting that the "party attacking the agency's decision bears the burden of establishing that the alleged error was prejudicial"); *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming the ALJ's decision "notwithstanding his initial error"). The Fourth Circuit's decision in *Garner v. Astrue* extended this harmless error rule to Social Security cases. *Garner v. Astrue*, 436 F. App'x 224, 226 (4th

Cir. 2011).

On review, the claimant contends that the ALJ's failure to weigh or even discuss the medical opinions of the DDS medical consultants amounts to prejudicial error. ECF No. 10 at 6. Subsequent to the DDS consultants' medical reviews of this case, Mr. Bennett developed another severe medical impairment, coronary artery disease. R. 17, 22. The claimant argues that had the ALJ weighed the consultants' opinions in light of this new impairment he would have necessarily assigned a more restrictive, sedentary RFC, and that with this designation, Mr. Bennett would become disabled under the application of Grid Rule 201.10. ECF No. 10 at 6.

The relevant question under this harmless error inquiry is whether the ALJ's failure to weigh or consider the consultants' opinions materially affected the disability determination. *See Alexander v. Astrue*, 5:09-CV-432-FL, 2010 WL 4668312 (E.D.N.C. Nov. 5, 2010). In their medical assessments conducted prior to the onset of the claimant's heart condition, two of the DDS medical consultants agreed that Mr. Bennett was capable of performing light work, and that he was not disabled. R. 60, 61, 73. The ALJ, after considering all of the claimant's impairments, including his heart condition, assigned Mr. Bennett a RFC of less than the full range of light work. R. 23. Claimant contends that had the ALJ weighed these consultants' medical opinions in light of Mr. Bennett's additional heart condition he would have necessarily arrived at a more restrictive, sedentary RFC. ECF No. 10. This assumption ignores the fact that the ALJ did consider the heart condition, and did assign a more restrictive RFC than the consultants preceding him, albeit one not as restrictive as the claimant believes is warranted in this case. On review, it is not this Court's duty to second-guess the ALJ's judgment as long as it is supported by substantial evidence in the record. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citing

*Craig v. Chater*, 76 F.3d at 589 (4th Cir. 1996)). The slightly more restrictive RFC assigned by the ALJ cannot be said to be unreasonable in light of the minimal limitations associated with Mr. Bennett's heart condition.[8] Therefore, the ALJ's assignment of an RFC of less than the full range of light work is supported by substantial evidence on the record.

What is lacking in the record is any evidence to suggest that the ALJ's RFC determination would have been more restrictive had he considered the DDS consultants' medical reviews. Dr. Longa and Dr. Castle were both non-examining, non-treating sources of medical evidence, which means that neither personally saw nor treated Mr. Bennett. R. 56, 68. Rather, their opinions relied entirely on medical evidence obtained second-hand, evidence the ALJ also reviewed. R. 55-56, 65-68. The Fourth Circuit previously has stated that the opinions of non-treating, non-examining sources deserve less weight. *Gordon v. Schweiker*, 725 F.2d 231, 235 (1984). As such, the DDS medical consultants' opinions deserved only minimal analysis.

The ALJ's failure to consider these opinions reveals itself to be even more harmless when considering that the consultants' RFC determinations were largely in line with the ALJ's RFC determination, and, in fact, were less favorable to Mr. Bennett's disability claim. R. 23, 56, 68. When medical evidence does not conflict with the ALJ's opinion, "the need for express analysis is weakened." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014). In this case, there was no need to discredit the DDS consultants' opinions because they were not in conflict with the ALJ's assessment. It would be a folly to say that had the ALJ considered these less favorable (to the claimant) medical reviews, his RFC determination would have been different; i.e., more favorable to the claimant. The ALJ's failure to address the medical opinions of DDS' medical

---

[8] The record indicates that Mr. Bennett's heart condition causes him chest pains about once a week. However, when these episodes occur, the prescription drug nitroglycerin provides him with quick relief. R. 44-45.

consultants, therefore, did not materially affect his RFC determination.

In sum, there is nothing contained in the DDS consultants' medical reviews that, if considered, would have changed the ALJ's RFC determination. As non-treating sources, the consultants offered no new medical evidence for the ALJ to consider. In addition, their RFC determinations were not in conflict with the ALJ's RFC determination, so a consideration of their opinions would not have had a material effect. Therefore, the ALJ's failure to consider these reports was merely harmless error.

## B. The ALJ's finding that Mr. Bennett's diabetes is not a severe medical impairment is supported by substantial evidence in the record.

Mr. Bennett's second argument on appeal is that the ALJ's finding that Mr. Bennett's diabetes is a non-severe impairment amounts to reversible error. ECF No. 10. In contrast, the Acting Commissioner argues that the ALJ's non-severe determination is supported by substantial evidence on the record, and alternatively, that even if the designation was in error, the error was harmless. ECF No. 12.

At step two of the sequential evaluation process, the ALJ is tasked with determining whether a claimant has any severe impairments. 20 C.F.R. § 404.1520(c). A severe impairment is defined as one that "significantly limits an individual's physical or mental abilities to do basic work activities." "Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe," Social Security Ruling 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). "An impairment is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. The ability to do "basic work activities" is defined as having the abilities and aptitudes to do most jobs. *Id.* If the claimant has

17

no severe impairment(s), the disability evaluation process ends at step two. 20 C.F.R. § 404.1520(c). If the claimant is found to have a severe impairment, the process continues on to the next steps. 20 C.F.R. § 404.1520(d)-(f).

As the claimant correctly notes, the DDS medical consultants both agreed that Mr. Bennett's diabetes is a severe impairment. R. 57, 69. However, both consultants failed to highlight any functional limitations associated with Mr. Bennett's diabetes. One of the consultants, Dr. Longa, while labeling the diabetes as a severe impairment, also noted that there was no evidence of significant damage to Mr. Bennett's vital organs as a result of the diabetes. R. 61. Dr. Castle similarly noted no functional limitations associated with Mr. Bennett's diabetes. R. 74. While the record does contain some evidence of symptoms resulting from claimant's diabetes such as polydipsia, polyuria, fatigue, numbness in the feet, and episodes of hypoglycemia, R. 568-84, there is scant evidence of any functional limitations associated with these symptoms. In addition, when testifying before the ALJ, Mr. Bennett failed to mention his diabetes or any associated limitations. Furthermore, the ALJ, in his opinion, unlike the DDS consultants, explained his decision to designate Mr. Bennett's diabetes as non-severe. R. 19-20. He recognized that "the claimant's diabetes was noted to be controlled on August 08, 2011," and he highlighted the lack of any significant limitations associated with Mr. Bennett's diabetes. R. 19-20. Substantial evidence in the record, therefore, supports the ALJ's finding that Mr. Bennett's diabetes was not severe because it did not "significantly limit" his ability to perform "basic work activities."

Even assuming the diabetes was incorrectly labeled as non-severe, such an error ultimately would be harmless. The claimant's other conditions, namely degenerative disc

disease, status post lumbar fusion, and coronary heart disease, were all deemed to be severe by the ALJ. R. 19. The evaluation process proceeded past step two based on these severe impairments. R. 20. Therefore, the designation of diabetes as non-severe did not halt the evaluation process at step two. Once a claimant moves beyond step two, the ALJ is required to consider the combined effects of all of the claimant's impairments, severe and non-severe, throughout the remaining steps of the evaluation process. 20 C.F.R. § 404.1523; *Cook ex rel. v. Colvin*, No. 2:11-cv-362, 2013 WL 1288156 (E.D. Va. Mar. 1, 2013). This Court has previously held an ALJ's failure to label an impairment as severe at step two to be harmless error as long as the ALJ discussed the evidence related to the impairment at subsequent steps in the evaluation process. *Id.* The ALJ in this case satisfied this requirement by referring to Mr. Bennett's diabetes in the subsequent analysis following step two. R. 20. Therefore, even if the ALJ committed error by failing to designate Mr. Bennett's diabetes as severe at step two, his subsequent analysis of the claimant's diabetes rendered such error harmless.

In sum, the decision by the ALJ is supported by substantial evidence in the record. Although the ALJ committed error by failing to weigh or consider the opinions of DDS medical consultants, such error was harmless because the error did not materially affect the outcome of this case. Furthermore, the ALJ's designation of Mr. Bennett's diabetes as a non-severe was not in error because the record lacks evidence of any significant functional limitations associated with his diabetes. Therefore, the Court would affirm the decision of the Acting Commissioner.

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Mr. Bennett's Motion for Summary Judgment, ECF No. 9, be **DENIED**, the Defendant's Motion for Summary Judgment,

ECF No. 11, be **GRANTED**, the final decision of the Acting Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE.**

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
March 20, 2014

21

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Robert W. Gillikin II
Rutter Mills, LLP
160 W. Brambleton Avenue
Norfolk, Virginia 23510
*Counsel for the Plaintiff*

Daniel P. Shean
United States Attorney's Office
World Trade Center
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
*Counsel for the Defendant*

Fernando Galindo
Clerk of the Court

By:

Deputy Clerk
March 21 , 2014

22